1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**
10
11   WALTER O'NEAL,                          Case No.: 2:21-cv-07735-FWS-PLA
12                        Plaintiff,          **ORDER GRANTING DEFENDANTS'**
                                              **MOTION FOR SUMMARY**
13          v.                                **JUDGMENT [51]**
14
15   SIDESHOW, INC., INSIGHT
     EDITIONS, L.P., and GREG
16   ANZALONE,
17
                          Defendants.
18
19
20
21
22
23
24
25
26
27
28

Before the court is Defendants Sideshow, Inc., Insight Editions, LP, and Greg Anzalone's (collectively, "Defendants") Motion for Summary Judgment on Plaintiff Walter O'Neal's ("Plaintiff") sole claim for copyright infringement. (Dkt. 51.) The matter is fully briefed. (Dkts. 55-56.) Based on the state of the record, as applied to the applicable law, the court **GRANTS** Defendants' Motion for Summary Judgment.

## I.    Background

### A.    Defendants' Request for Judicial Notice

Defendants request judicial notice of copyright registrations from the U.S. Copyright Office of works pertaining to comic book characters such as "Green Lantern," "Batman," "Superman," "Joker," and "Sinestro" by claimant "DC Comics." (*See* Dkts. 51-3 ¶¶ 5-9 & Exhs. D-H; 51-12 ¶¶ 1-6 & Exhs. 1-5; 60 & Exhs. 1-5; 61, Exh. 1.) The court agrees that copyright registrations sourced from the U.S. Copyright Office are proper subjects for judicial notice. *See, e.g.*, *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (relying on copyright registration records of which party sought judicial notice). The court finds these registrations sufficiently relevant to the Motion and the facts contained therein capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *Sybersound Recs.*, 517 F.3d at 1146. Accordingly, the court **GRANTS** Defendants' request for judicial notice.

### B.    Material Facts[1]

Plaintiff is a freelance artist. (Dkt. 55-1 ("D SUF") No. 2.) Between 2009 and 2011, Plaintiff created and sent nine sketches to Defendant Sideshow ("sketches"). (D

---

[1] Unless otherwise noted, the material facts are undisputed. In its analysis of the Motion, the court makes its determination of what constitutes a disputed fact based on its review of the record, including the evidence supporting Defendants' Separate Statement of Undisputed Facts (Dkts. 27-2; 32-1) and Plaintiff's Statement of Genuine Issues of Material Fact (Dkt. 30). The court's citations to the parties' statements of fact relate to the supporting admissible evidence, rather than how the

1  SUF No. 3.)  Each of the sketches depicts a character that previously appeared in

2  comic books published by DC Comics, a nonparty to this action.  (D SUF No. 4.)  The

3  nine sketches, shown below, depict the comic book characters Batman, Superman, the

4  Joker, Green Lantern, and Sinestro in the following heroic (or villainous) postures:



parties characterize it, and thus the court does not consider objections brought on that
basis.  *See AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1071 (C.D.
Cal. 2015) ("In deciding the motions for summary judgment, the [c]ourt examines the
underlying evidence, not the summary statements or . . . compound paragraphs offered
in the parties' statements of undisputed facts.") (citation omitted), *aff'd sub nom.
AFMS LLC v. United Parcel Serv., Inc.*, 696 Fed. App'x 293 (9th Cir. 2017); *Bischoff
v. Brittain*, 183 F. Supp. 3d 1080, 1084 (E.D. Cal. 2016) ("[T]he court will not
consider [] objections aimed at the characterization or purported misstatement of the
evidence as represented . . . .  The court's decision relies on the evidence submitted
rather than how that evidence is characterized in the statements.") (citation omitted);
*Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal.
2019) ("[T]he [c]ourt will not consider the parties' objections to the characterization
of or purported misstatement of the evidence represented.") (citing *Hanger
Prosthetics & Orthotics*, 556 F. Supp. 2d at 1126 n.1 (E.D. Cal. 2008)).



(*See, e.g.*, Dkt. 55-16, Exh. BB)

Plaintiff recorded copyrights of the sketches with the U.S. Copyright Office.  (D SUF No. 7; Dkt. 51-3, Exh. B.)  As a reference point in creating the sketches, Plaintiff used photographs of himself posing in the manner in which he would later depict the characters in his sketches.  (Dkt. 56-1 ("P SUF") No. 2.)  However, DC Comics and

1     other third parties own copyrights in these characters' elements.[2] (*See* Dkts. 51-3

2     ¶¶ 5-9 & Exhs. D-H; 51-12 ¶¶ 1-6 & Exhs. 1-5; 60, Exhs. 1, 3-5; 61, Exh. 1.) Though

3     the record includes other comparisons between Plaintiff's photographs and his

4     sketches, it is sufficient here to highlight the following as an example:

 

---

[2] While Plaintiff contends Defendants do not identify the specific copyrighted works
that form the basis of their claim that Plaintiff's works are derivative of others'
copyrights, (Dkt. 55 at 10-11), the court finds this argument unpersuasive considering
Defendants reference undisputed evidence in the record indicating that Plaintiffs'
sketches are based on characters created by third parties, (*see* Dkt. 56 at 4-6). For
example, Plaintiff has copyright registrations of works depicting these characters
registered to third parties, and his declaration, deposition testimony, and interrogatory
responses indicate he produced his sketches of the same characters reflected in these
copyrighted works without a license from their owner(s). (*See, e.g.*, Dkts. 55-2, Exh.
G, at 55:12-25, 109:2-11; *id.*, Exh. H, Interrogatories 6-8; 55-16 ¶¶ 3-4.) Defendants
also request judicial notice of a litany of copyright registrations which Defendants
argue form the basis for their argument that Plaintiff's sketches are derivative of
copyrighted comic book characters. (*See, e.g.*, Dkt. 51-12.)

1    (Dkt. 55-16, Exh. AA)

2        In support of his asserted copyrightable contributions, Plaintiff also created

3    "side by side" comparisons of his sketches and images demonstrating what he believes

4    remains after filtering out the elements copyrighted by third parties.  (P SUF No. 3.)

5    Plaintiff further points to the individual deposition testimony of an employee of

6    Defendant Sideshow, in which the employee testified that certain art prints of Batman

7    and the Hulk "appear[ed] to be in [Plaintiff's] art style."  (Dkt. 55-2, Exh. M; P SUF

8    No. 6.)

9        Plaintiff created the sketches without a license from DC Comics, though

10   correspondence between Plaintiff and DC Comics employees indicates DC Comics

11   was aware that Plaintiff created drawings of these characters and sought to sell the

12   sketches to DC Comics and its partners.  (D SUF No. 5; P SUF No. 4.)

13       In 2020, Defendant Insight Editions published a book titled "DC: Collecting the

14   Multiverse: The Art of Sideshow" ("DC Art Book").  (D SUF No. 8.)  The DC Art

15   Book included reproductions of Plaintiff's sketches.  (*Id.*; Dkt. 51-3 ¶ 4 & Exh. C.)  In

16   this action, Plaintiff asserts one claim for copyright infringement against Defendants

17   based on the unauthorized use of his sketches.  (*See* Dkt. 39.)

18   **II.   Legal Standard**

19       **A.    Motion for Summary Judgment**

20       "The court shall grant summary judgment if the movant shows that there is no

21   genuine dispute as to any material fact and the movant is entitled to judgment as a

22   matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is

23   sufficient evidence for a reasonable fact finder to find for the non-moving party.

24   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it

25   may affect the outcome of the case, and the "substantive law [] identif[ies] which facts

26   are material."  *Id.*  "Only disputes over facts that might affect the outcome of the suit

27   under the governing law will properly preclude the entry of summary judgment."  *Id.*

28

1    The moving party bears the initial burden of identifying the elements of the

2    claim or defense on which summary judgment is sought and evidence that it believes

3    demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477

4    U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at

5    trial, the movant can satisfy its initial burden by demonstrating that there is an absence

6    of evidence to support the non-moving party's case. *Id.* at 325; see also *Horphag*

7    *Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears

8    the initial burden to demonstrate the absence of any genuine issue of material fact.").

9    The non-moving party then "must set forth specific facts showing that there is a

10   genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far*

11   *Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (in opposing summary

12   judgment, "the non-moving party must go beyond the pleadings and by its own

13   evidence 'set forth specific facts showing that there is a genuine issue for trial'");

14   *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving

15   party may not oppose summary judgment by allegations but must show specific trial-

16   worthy facts."). "Where the record taken as a whole could not lead a rational trier of

17   fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*

18   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat.*

19   *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at

20   the summary judgment stage, the court does not make credibility determinations or

21   weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

22   (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving

23   party's favor. *In re Oracle Corp.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*,

24   477 U.S. at 255).

25       Nevertheless, "inferences are not drawn out of thin air, but from evidence."

26   *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*,

27   810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a

28   genuine issue of material fact exists" does not preclude summary judgment. *Harper v.*

*Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).  "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248 (internal quotation marks omitted).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.  In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).  "Where no such showing is made, the moving party is entitled to a

1  judgment as a matter of law because the nonmoving party has failed to make a

2  sufficient showing on an essential element of her case with respect to which she has

3  the burden of proof." *Id.* (cleaned up).

4  **III.  DISCUSSION**

5      **A.      Plaintiff's Argument that Defendants Lack Standing Under the**

6              **Copyright Act**

7          Plaintiff asserts Defendants "do not have standing" to challenge Plaintiff's

8  copyrights; Defendants assert this argument is premised on a fundamental

9  misunderstanding that the Copyright Act's limitation that only copyright holders may

10  bring an infringement action somehow extends to defenses to infringement actions

11  asserted on the basis the plaintiff does not hold a valid copyright.  (Dkts. 55 at 11-13;

12  56 at 6.)  The court agrees with Defendants.

13          Under § 501(b) of the Copyright Act, only "[t]he legal or beneficial owner of an

14  exclusive right under a copyright is entitled . . . to institute an action for any

15  infringement of that particular right committed while he or she is the owner of it." 17

16  U.S.C. § 501(b).  "[I]t is established law under the 1976 [Copyright] Act that any

17  party to whom such a right has been transferred—whether via an assignment or an

18  exclusive license—has standing to bring an infringement action based on that right."

19  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015)

20  (citations omitted).

21          Plaintiff is the party bringing a copyright infringement claim, not Defendants.

22  Statutory standing under the Copyright Act concerns a party's "statutory right to sue

23  for infringement under the Copyright Act."  *See id.* at 1001; *see also Lexmark Int'l,*

24  *Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014).  Because

25  Defendants assert no claim against Plaintiff under the Copyright Act or otherwise,

26  Plaintiff's argument that Defendants lack statutory standing is inapplicable.

27

28

**B.      The *Durham* Test**

Arguing under the test articulated by the Second Circuit in *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980) and later adopted by the Ninth Circuit, Defendants contend Plaintiff lacks a valid copyright in his sketches because the sketches do not sufficiently deviate from the copyrights in the underlying characters held by third parties and granting Plaintiff a derivative copyright would affect the scope of those preexisting copyrights in those characters.  (Dkts. 51 at 4-8; 56 at 7-10.)  Plaintiff maintains his sketches are almost entirely comprised of his own original copyrightable contributions and that his copyrights do not amount to a "de facto monopoly" on the underlying registered copyrights of the characters.  (Dkt. 55 at 13-17.)

"To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022) (cleaned up); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340. 361 (1991).  "The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"  *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (citation omitted).

"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  "To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."  *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (citations omitted).

The Copyright Act defines a "derivative work" as a work "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and includes "work[s] consisting of editorial revisions, annotations, elaborations, or

other modifications which, as a whole, represent an original work of authorship."  17 U.S.C. § 101; *see also ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 425-26 (9th Cir. 2018) (noting permission to create derivative works is sufficient to confer ownership of copyright in the derivative works to the extent of their original expression to the creator of the derivative work).  Under the same Act, "a derivative author may own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create."  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012).

The Ninth Circuit has "adopted the Second Circuit's test for ascertaining whether a derivative work" is copyrightable.  *Id.*  Under it, "to be copyrightable, (1) 'the original aspects of a derivative work must be more than trivial' *and* (2) 'the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material.'"  *Id.* (emphasis added) (first quoting *Ent. Rsch.*, 122 F.3d at 1220 (then quoting *Durham*, 630 F.2d at 909)).  "This is known as the *Durham* test."  *ABS Ent.*, 908 F.3d at 414.  "The first prong asks whether the derivative work is original to the author and non-trivial and the second prong ensures that the derivative work author does not hinder the original copyright owner's ability to exercise all of its rights."  *Id.*  "Both prongs arise out of Copyright's basic focus on originality."  *Id.*; *see also U.S. Auto Parts*, 692 F.3d at 1016.

As Defendants point out, the Ninth Circuit has previously held in *DC Comics v. Towle* that the Batmobile, Batman's car, is a copyrighted character.  802 F.3d 1012, 1019-23 (9th Cir. 2015).  Here, the parties do not dispute its driver (Batman) and the other characters at issue—Sinestro, Green Lantern, the Joker, and Superman—are protectible and protected under copyright law.  The court sees no reason to depart from the parties' position that each is a copyrighted character.  *See also Daniels v. Walt Disney Co.*, 958 F.3d 767, 771 (9th Cir. 2020) (holding a "character is entitled to copyright protection if (1) the character has 'physical as well as conceptual qualities,'

1  (2) the character is 'sufficiently delineated to be recognizable as the same character

2  whenever it appears' and 'display[s] consistent, identifiable character traits and

3  attributes,' and (3) the character is 'especially distinctive' and 'contain[s] some unique

4  elements of expression.'") (alteration in original) (quoting *Towle*, 802 F.3d at 1021);

5  *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978) ("[A] comic

6  book character, which has physical as well as conceptual qualities, is more likely [than

7  a literary character] to contain some unique elements of expression."). While, as

8  noted above, Plaintiff takes issue with Defendants' asserted lack of specificity in

9  identifying the particular copyrighted iterations of these characters on which their

10 argument relies, the court nevertheless finds there is no material dispute that

11 Plaintiff's works are based on copyrighted character elements held by third parties.

12          1.    <u>First Prong of the *Durham* Test</u>

13          Whether derivative works are "sufficiently 'original' to justify protection as

14 derivative works" under *Durham*'s first prong depends on whether "the 'author'

15 contributed something more than a 'merely trivial' variation." *Ent. Rsch.*, Inc., 122

16 F.3d at 1221 (citations omitted). *Durham* and *Ent. Resch.* provide useful guidance in

17 this case.

18          In *Durham*, a toy company that produced Mickey Mouse, Pluto, and Donald

19 Duck toys claimed ownership of a derivative copyright in those characters. *Durham*,

20 630 F.2d at 908-11. The Second Circuit reasoned that "the mere reproduction of the

21 Disney [cartoon] characters in plastic, even though the adaptation of the preexisting

22 works to this medium undoubtedly involved some degree of manufacturing skill, does

23 not constitute originality as this Court has defined the term." *Id.* at 910. Accordingly,

24 the Second Circuit held that the toys "reflect[ed] no independent creation, [and] no

25 distinguishable variation from preexisting works." *Id.*

26          Applying the *Durham* test, the Ninth Circuit in *Ent. Rsch.* evaluated the

27 originality of a costume-maker's three-dimensional inflatable costumes based on two-

28 dimensional copyrighted characters including "Dough Boy," "Toucan Sam," and

"Cap'n Crunch."  122 F.3d at 1217-18, 1221-24.  First, the Ninth Circuit did not consider the differences implemented due to technical, functional, and utilitarian concerns, because copyright in a sculpture work exists only to the extent the work incorporates features independent of such aspects under 17 U.S.C. § 101.  *Id.* at 1221. Evaluating the remaining changes, namely the differences in the characters' facial expressions, the Ninth Circuit held that "no reasonable trier of fact would see anything but the underlying copyrighted character," *id.* at 1223, because "in the context of the overall costume, these distinctions are so slight that no reasonable trier of fact would see anything but a direct replica of the underlying characters."  Thus, because the costumes were "instantly identifiable as embodiments' of the underlying copyrighted characters in 'yet another form,' no reasonable juror could conclude that there are any 'non-trivial' artistic differences between the underlying cartoon characters and the immediately recognizable costumes."  *Id.* (quoting *Durham*, 630 F.2d at 910).

As the images above and the parties' positions demonstrate, Plaintiff's sketches are undoubtedly based on the copyrighted characters of Batman, Sinestro, Green Lantern, the Joker, and Superman.  Plaintiff argues the evidence demonstrates he has made sufficient separate copyrightable contributions to warrant protection, principally pointing to his identifications of the elements he contends were independently copyrightable and the pictures demonstrating his artistic process.  (Dkt. 55 at 13-15.)

As an initial matter, the comparison provided by Plaintiff compares his sketches with the underlying copyrighted works "without DC trademark elements," not absent their *copyrightable* elements.  (*See* Dkt. 55-16 ¶ 3 & Exh. BB.)  Even if treated as a comparison of the respective works' copyrightable elements, Plaintiff has not been established as a copyright expert, and so the court declines to consider it as admissible evidence.  *See Frisby v. Sony Music Ent.*, 2021 WL 2325646, at *18 (C.D. Cal. Mar. 11, 2021) (finding Plaintiff's sworn statements that copying of protected elements occurred based on his own examination inadmissible as evidence at summary judgment because Plaintiff was not an expert); *Ent. Rsch.*, 122 F.3d at 1222-24

-13-

1  (artwork, photographs, and declaration of creator of costumes regarding creator's

2  "artistic decisions" were insufficient to raise disputed factual issue as to whether there

3  were any non-trivial artistic differences between the costumes and the underlying

4  copyrighted characters).

5          Plaintiff has submitted other evidence that he asserts demonstrate his

6  independent creation of his sketches, i.e., that he used pictures of himself as exemplars

7  to determine the contours of the characters' features in his sketches.  (Dkt. 55-16, Exh.

8  AA.)  Generally, transferring copyrighted comic book characters to a different

9  medium, i.e., creating detailed standalone sketches of characters appearing first in

10  comic book artwork, is insufficient to create a standalone copyrightable work.  *See*

11  *ABS Ent.*, 908 F.3d at 416 ("[T]he mere act of translating the derivative work into a

12  different medium did not confer a distinct identity on the derivative work.") (citing

13  *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*, 528 F.3d 1258, 1267 (10th Cir. 2008));

14  *Ent. Rsch.*, 122 F.3d at 1222 ("[T]he courts and commentators seem to agree that

15  making decisions that enable one to reproduce or transform an already existing work

16  into another medium or dimension—though perhaps quite difficult and intricate

17  decisions—is not enough to constitute the contribution of something recognizably his

18  own.") (citations and internal quotation marks omitted); *Schrock v. Learning Curve*

19  *Int'l, Inc.*, 586 F.3d 513, 520 n.3 (7th Cir. 2009) ("[A] mere shift in medium, without

20  more, is generally insufficient to satisfy the requirement of originality for copyright in

21  a derivative work.") (citation omitted); 2 M. Nimmer & D. Nimmer, Nimmer on

22  Copyright § 8.01[B] (2022).  More specifically, authorities suggest the contributions

23  Plaintiff contends he made to the underlying works—i.e., the fighting poses of comic

24  book characters he derived from his own photographs—are not independently

25  copyrightable.  *See Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1068 (9th

26  Cir. 2016) ("[A] character's copyright encompasses its 'distinctive character traits and

27  attributes, even if the character does not maintain the same physical appearance in

28  every context.'") (quoting *Towle*, 802 F.3d at 1020); *Horizon Comics Prods., Inc. v.*

1   *Marvel Ent., LLC*, 246 F. Supp. 3d 937, 943 (S.D.N.Y. 2017) (noting a "fighting

2   pose" is a "scène à faire in the superhero or comic book context"); *Mattel, Inc. v.*

3   *Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) (holding a figurine's

4   "rendering" of the idea of "a superhuman muscleman crouching in what since

5   Neanderthal times has been a traditional fighting pose" is not a protectible element

6   under copyright) (citation omitted); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111,

7   1128 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th

8   Cir. 2020) (Owens, J., concurring) (collecting cases from the First, Second, and Ninth

9   Circuits holding poses in photographs and figurines were unprotected element).

10      Absent further evidence demonstrating Plaintiff made independently

11   copyrightable contributions to the underlying characters, the court is doubtful that

12   Plaintiff's works add sufficiently nontrivial copyrightable elements in satisfaction of

13   the first *Durham* prong.  But the court acknowledges that "originality" in copyright is

14   a low bar.[3]  *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345

15   (1991) ("To be sure, the requisite level of creativity is extremely low; even a slight

16   amount will suffice.").  Ultimately, even assuming Plaintiff's contributions to the

17   underlying copyrighted works are independently copyrightable, for the reasons

18   discussed below, the court concludes Plaintiff's sketches fail the second prong of the

19   *Durham* test.

20              2.   Second Prong of the *Durham* Test

21      The second prong of the *Durham* test "requires that a copyright-eligible

22   derivative work must 'reflect the degree to which it relies on preexisting material and

23   must not in any way affect the scope of any copyright protection in that preexisting

24   material.'"  *ABS Ent.*, 908 F.3d at 423-24 (quoting *U.S. Auto Parts*, 692 F.3d at 1016).

25   "This prong ensures that a derivative work author—even one who contributes the

26

27   ────────────────
[3] Moreover, Defendants fail to specifically identify the elements of the works they
28   claim Plaintiffs' sketches feature coextensively.

-15-

1   requisite amount of creative authorship under the first prong—does not 'prevent the

2   owner of the preexisting work from exercising some of its rights under copyright

3   law.'" *Id.* (quoting *U.S. Auto Parts*, 692 F.3d at 1017).

4        *Durham* and *Ent. Rsch.* are again instructive.  The Second Circuit reasoned that

5   recognizing the toy company's derivative copyright in the toys would, "as a practical

6   matter," require other licensees of Disney's characters "to make substantial changes in

7   these characters in order to avoid infringing [the toy company's derivative] rights."

8   *Durham*, 630 F.2d at 911.  Thus, "Disney's right to copy (or to permit others to copy)

9   its own creations would, in effect, be circumscribed." *Id.*  Accordingly, the Second

10  Circuit held that the toys were not independently copyrightable. *Id.* at 910-11.

11       Similarly, in applying the second prong of the *Durham* test in *Ent. Rsch.*, the

12  Ninth Circuit held that granting the costume-maker a derivative work copyright in the

13  costumes "would have the practical effect of providing [costume-maker] with a de

14  facto monopoly on all inflatable costumes depicting the copyrighted characters also in

15  [costume-maker's] costumes" given the similarity between the characters and the

16  costumes.  122 F.3d at 1224.  The Ninth Circuit cautioned that "any future licensee

17  who was hired to manufacture costumes depicting these characters would likely face a

18  strong copyright infringement suit" from the costume-maker otherwise. *Id.*

19       In dicta, the Ninth Circuit has previously "question[ed] whether a derivative

20  work based on a character could ever have any independently copyrightable elements

21  that would not affect the scope of any copyright protection in that preexisting

22  material." *Towle*, 802 F.3d at 1025 (citation and internal quotation marks omitted).

23  While the court need not consider such a categorical determination here, it nonetheless

24  finds Plaintiff's sketches do not pass muster under the second prong of the *Durham*

25  test.

26       It is undisputed that Plaintiff's sketches are manifestations of copyrighted

27  comic book characters and that he does not own the copyrights in their elements.

28  Moreover, there is also considerable overlap between the mediums of Plaintiff's

-16-

sketches and the characters' copyrights, and apparent first use in the media, as drawn comic book characters from graphic novels.  Given these considerations, the court finds granting Plaintiff a derivative copyright in the sketches would substantially affect the scope of the copyright protection in the preexisting material.  Stated differently, "[i]f [the court] were to recognize [Plaintiff's] derivative copyrights in [his sketches], those who, like [Defendants], have obtained from [DC Comics or other third parties] the right to copy [its] own characters would, as a practical matter, have to make substantial changes in these characters in order to avoid infringing [Plaintiff's] rights." *Durham*, 630 F.2d at 911.  "Indeed, if [Plaintiff] had copyrights for [his sketches], any future licensee who was hired to [create sketches] depicting these characters would likely face a strong copyright infringement suit from [Plaintiff]." *See Ent. Rsch.*, 122 F.3d at 1224.  Thus, as in both *Durham* and *Ent. Rsch.*, recognizing Plaintiff's derivative copyright in his sketches of those characters would effectively give him a pseudo-monopoly over sketches of these characters. *See id.* at 1224; *Durham*, 630 F.2d at 911.  Thus, the court find Plaintiff's sketches fail the second prong of the *Durham* test.

### C.      Remaining Arguments

Defendants, relying principally on *Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234 (C.D. Cal. 2003), argue Plaintiff's sketches lack copyright protection because third party copyrights "pervade" Plaintiff's work.  (Dkts. 51 at 4-5; 55 at 12-13; 56 at 7-8.)  Because the court finds Plaintiff's sketches fail the *Durham* test, the court need not consider whether they are unprotected because third party copyrighted works "pervade" Plaintiff's sketches. *Cf. Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1090-91 (C.D. Cal. 2016) (although "courts may 'deny copyright to derivative works in which [a] pre-existing work tends to pervade the entire derivative work,'" courts need not "necessarily deny protection '*per se* [due to] the reproduction of any particular prior work'") (alterations in original) (quoting 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 3.06 (2015)).

Finally, Plaintiff argues Defendants violated Federal Rule of Civil Procedure 11 by failing to have a good faith belief to file the Motion, which Defendants dispute. (Dkts. 55 at 17-19; 56 at 10.)  It is unclear what relief Plaintiff seeks pursuant to Rule 11, and, to the extent Plaintiff seeks sanctions under that Rule, Plaintiff's argument is improperly raised because it does not comply with Rule 11's safe harbor and separate motion requirements.  *See* Fed. R. Civ. P. 11(c)(2) (motions for sanctions brought under Rule 11 "must be made separately from any other motion" and "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service [of the separate motion] or within another time the court sets"); *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1151 (9th Cir. 2002) (where "sanctions are initiated by motion, Rule 11 provides for a mandatory 21 day safe-harbor period before a motion for sanctions is filed with the court") (citation omitted); *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("When Rule 11 sanctions are initiated by motion of a party, that motion must be separate from other motions or requests.") (citation and internal quotation marks omitted).  Regardless, the court finds the instant Motion does not violate Rule 11(b) even if the court were to consider Plaintiff's argument on its merits.[4]

## IV.    DISPOSITION

Because the court finds there is no genuine issue of material fact that Defendants are entitled to judgment as a matter of law under the *Durham* test, the court concludes summary judgment in favor of Defendants on Plaintiff's copyright infringement claim is proper.  Accordingly, the Motion is **GRANTED**.  Defendants

---

[4] In their papers, the parties make passing references to different sections of the Compendium of Copyright Office Practices ("Compendium").  (*See* Dkts. 51 at 9; 55 at 16.)  The parties do not sufficiently demonstrate, nor is the court aware of authority demonstrating, that the Compendium bears on the issues presented here.  Nor does either party appear to raise a cognizable affirmative argument regarding it. Accordingly, the court does not consider the Compendium further.

1  are **ORDERED** to file a proposed judgment consistent with this Order within **ten (10)**

2  **days** of this Order.

3

4

5      **IT IS SO ORDERED.**

6

7

8  DATED: March 14, 2023

9                                      Honorable Fred W. Slaughter
                                       UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28